UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY SIZER,

                              DECISION

                Plaintiff,         and ORDER

vs.                                12-CV-6667T


CAROLYN W. COLVIN,

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.


_____

## INTRODUCTION

Plaintiff, Timothy Sizer ("Sizer" or "Plaintiff"), brings this action pursuant to the Social Security Act § 216(i) and § 223, seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in the record and is contrary to applicable legal standards.

On July 10, 2013, the Commissioner moved for judgment on the pleadings pursuant to 42 U.S.C. § 405 (g) on the grounds that the findings of the Commissioner are supported by substantial evidence. On August 5, 2013 Plaintiff cross-moved for summary judgment seeking to reverse the Commissioner's decision judgment. For the reasons set forth below, this Court finds that there is substantial evidence in the record to support the Commissioner's decision. Therefore, the

Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's motion is denied.

## PROCEDURAL HISTORY

On November 23, 2009, Plaintiff filed an application for DIB and SSI under Title II, § 216(i) and § 223 of the Social Security Act, alleging a disability since October 18, 2008 arising from a left hip injury. T. 194, 213. Plaintiff's claim was denied on January 19, 2010. T. 131-133. At Plaintiff's request, an administrative hearing was conducted on May 26, 2011 before an Administrative Law Judge ("ALJ") at which Sizer testified and was represented by counsel. T. 94-115.

On June 10, 2011, the ALJ issued a Decision finding that Sizer was not disabled within the meaning of the Social Security Act ("the Act"). T. 120-27. On October 24, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. T. 1-3. This action followed.

## BACKGROUND

Plaintiff is a 48 year old high school graduate who had worked doing janitorial and cleaning work for a maintenance company off and on from 1982 through December 31, 2006. T. 194-196. Plaintiff did general cleaning work including lifting and carrying old furniture and garbage which required him to lift 50 pounds or more frequently. T. 196.

In his application, Sizer claimed that he could not walk, sit or stand for a long period of time. T. 207.  He was able to prepare hot meals for himself on a daily basis as well as do simple chores around the house such as wash the dishes. T. 208-09.  Sizer claimed that he could only walk one block before needing to rest and uses a cane for longer distances. T. 212.

A. <u>Medical History</u>

X-rays taken of the left hip on January 15, 2007 showed "severe degenerative osteoarthritis with subchondral sclerosis and cyst formation and loss of joint space." T. 293.  X-rays taken of the hip on May 14, 2008 showed severe degenerative osteoarthritis with loss of joint space superiorly. T. 274.

On December 11, 2008, Plaintiff was treated at the Strong Health Clinic for left hip pain. T. 237. X-rays from July, 2008 demonstrated arthritic changes in the left hip including subchondral sclerosis and subchondral cysts in both the femoral and acetabular side. T. 237. Plaintiff was diagnosed with "moderate to advanced left hip arthritis" and treated with conservative management including anti-inflammatories, and physical therapy. T. 237-38. Plaintiff was told that at some point in the future he would need surgery to include total joint arthroplasty. T. 238.

On March 31, 2009, Dr. Walter Beecher, a family medicine practitioner of Woodward Health Center began treating Plaintiff for

left hip pain which Plaintiff claimed was worsening. T. 272. Examination showed Plaintiff's left hip was tender laterally and painful at flexion and external rotation. T. 272. Plaintiff was told to continue taking Ibuprofen and Flexeril three times a day and was referred for physical therapy. T. 272.

Dr. Beecher examined Plaintiff on October 22, 2009 for worsening left hip pain. T. 268. Sizer complained of steady ache, poor sleep and some instability with falls. He also claimed that Advil was not helping much. T. 268. Dr. Beecher advised Plaintiff to continue Ibuprofen and Flexeril three times a day and referred Plaintiff for more physical therapy. He also provided the written excuse requested by Plaintiff from the Department of Social Services ("DSS") work program. T. 268.

An Independent Medical Examination of Sizer was conducted on January 6, 2010 by Dr. Sandra Boehlert. T. 241-244. Plaintiff complained of left hip pain that throbbed with sitting, lying or standing too long. T. 241. He also reported shooting pain in this groin. T. 241. Plaintiff was taking Ibuprofen for hip pain and Albuterol for asthma. T. 241. Plaintiff reported that he was able to cook, clean, do laundry and shop as necessary. T. 241. He cooked six days a week, shopped twice a month and showered, bathed and dressed himself daily. T. 241.

Dr. Boehlert observed full flexion, extension, lateral flexion and rotary movement in the cervical and lumbar spine. T. 243.

Plaintiff did have decreased range of motion in the left hip with interior rotation limited to 20 degrees, exterior rotation to 20 degrees but full flexion and extension. T. 243. Abduction was also limited to 20 degrees and there was marked pain. The right hip had full range of motion. T. 243. Although he appeared to be in no acute distress and had a normal gait, Sizer was not able to walk on his heels and toes without severe left hip pain. T. 242. He squatted only one third of the way down with left hip pain. T. 242. He needed no assistive devices and was able to get on and off the exam table without assistance. T. 242.

Dr. Boehlert diagnosed Plaintiff with "severe left hip pain, possible acute sprain" and "chronic musculoskeletal disease." T. 243. Dr. Boehlert concluded that Plaintiff had acute limitations which were moderate to marked to heavy exertion in a standing position. T. 243.

A Residual Functional Capacity Assessment Form was completed on January 15, 2010 by D. O'Connor. T. 245-250. Plaintiff was assessed to be able to lift occasionally 20 pounds, frequently lift 10 pounds and stand or walk a total of about six hours in an eight hour work day. T. 246. Plaintiff was assessed to be able to sit for a total of about six hours in an eight hour workday and have unlimited ability to push or pull. T. 246. The report noted that Plaintiff was diagnosed with moderate to advanced left hip arthritis, mild arthritic changes in the right hip and that he was treated

conservatively with medication and physical therapy. T. 246. There were no postural, manipulative, visual, communicative nor environmental limitations found. T. 247-248. O'Connor noted Dr. Boehlert's finding that Plaintiff's claims of pain were not completely credible pointing out that he was only taking Motrin and Vicodin as needed and was not using a cane to ambulate despite his claim that he needed one. T. 249.

Plaintiff had an appointment with Dr. Beecher on February 16, 2010 to review paperwork. T. 320. Dr. Beecher provided Plaintiff with a prescription for more physical therapy and completed a DSS form. T. 320. Plaintiff was continued on Ibuprofen and Flexeril. T. 320.

Dr. Beecher examined Plaintiff on May 18, 2010 for hip therapy. T. 264. Plaintiff was taking Ibuprofen and Flexeril three times a day and was prescribed Vicodin to take as needed for severe pain. T. 264. Dr. Beecher referred Plaintiff to an orthopedist for evaluation and injection therapy. T. 264.

Plaintiff was examined by Dr. Beecher on July 15, 2010 for left hip pain. T. 260. The medical notes indicate that Plaintiff requested a doctor's excuse for DSS from a work requirement. T. 260. Dr. Beecher advised Plaintiff to continue with Ibuprofen, Flexeril and Vicodin as needed for pain and he gave him an excuse note from doing maintenance work. T. 260.

Dr. Beecher saw Plaintiff on September 28, 2010 and again on December 21, 2010 for his left hip pain. T. 256. Sizer was advised to continue with current medications and again referred to an orthopedist. T. 254, 256. Dr. Beecher noted that a trial injection by the orthopedist in the groin area was not successful in easing the pain. T. 254.

On February 1, 2011, Plaintiff was treated by Dr. Beecher for continued complaints of left hip pain. T. 252. Sizer wanted an updated excuse from work assignment as he felt he could not work. T. 252. He was advised to stop Flexeril but continue Ibuprofen and Vicodin for pain. T. 252.

A Physical Assessment for Determination of Employability for Monroe County Department of Human Services was completed on February 10, 2011 by Dr. Beecher who indicated that Sizer was unable to work for six months for severe hip arthritis. T. 284. He limited Plaintiff to be able to walk, stand, sit, push, pull, bend and lift or carry only one to two hours in an eight hour workday. T. 286.

Dr. Beecher completed a Physical Impairment and Residual Functional Capacity Questionnaire regarding Plaintiff on April 26, 2011 in which he noted that Plaintiff's prognosis was "poor" because he would likely need a total hip replacement. T. 288. He reported that Plaintiff was in severe constant pain in the left hip to groin. T. 288. Dr. Beecher opined that the impairments were reasonably consistent with the symptoms and functional limitations described in

this document. T. 289. Dr. Beecher opined that Plaintiff's pain was severe enough to constantly interfere with his attention and concentration needed to perform even simple work tasks. T. 289. However, Dr. Beecher noted that Plaintiff was capable of low stress or high stress jobs as stress was not an issue as much as physical impairment. T. 289. He estimated that Plaintiff could walk less than one block and could only sit for 15 or 20 minutes at a time and stand for 5 to 10 minutes. T. 289-290. Plaintiff could sit at least 6 hours in an 8 hour work day and stand or walk less than 2 hours. T. 290. Plaintiff would need to walk around every 20 minutes for about five minutes at a time in an 8 hour workday. T. 290. Sizer would need a job that permits shifting positions at will and take unscheduled breaks for approximately five minutes. T. 290. Dr. Beecher noted that Plaintiff could occasionally lift less than 10 pounds but never more than 10 pounds. T. 291. Sizer could frequently look down, turn his head, look up or hold head still. He should rarely twist or climb stairs but never stoop, crouch/squat, and climb ladders. T. 291. Dr. Beecher opined that Plaintiff should avoid all exposure to extreme cold, wetness, humidity and hazards but had no restriction to extreme heat, noise and fumes or odors. T. 292.

The medical records indicate that Dr. Beecher met with Plaintiff on April 26, 2011 to complete the Residual Physical Capacity Assessment form together. T. 302. During this visit, the examination

showed that Plaintiff had limited painful flexion at 60 degrees and was mildly tender laterally. T. 302.

Soon after this Residual Functional Capacity Assessment was completed, on May 18, 2011 Plaintiff's attorney contacted Dr. Beecher by letter pointing out that there was an inconsistency between this form in which Dr. Beecher indicated that Sizer could sit up to six hours and earlier records, and another to Monroe County Department of Social Services in which he indicated that Sizer could sit for only 1 to 2 hours and another medical note from March 31, 2009 in which he indicated that Sizer could only sit for 30 minutes at a time. T. 294. The attorney specified to Dr. Beecher that Sizer cannot demonstrate that he is disabled if the record shows that he can sit for six hours and asks that Dr. Beecher to clarify the issue by explaining that Sizer has good days and bad days and that some days he may be able sit for longer periods of time than others and that Sizer's condition only improved slightly in the past two years. T. 294.

On September 1, 2011, Plaintiff was examined by Dr. Beecher. T. 91. Sizer had been treated with land and water based physical therapy without lasting improvement. T. 91. Sizer reported that he wanted to go back to an orthopedist regarding surgery. Dr. Beecher continued Plaintiff on Ibuprofen, Vicodin and added Elavil to help with sleep, depression and chronic pain. T. 91. Similarly, at his

October 4, 2011 appointment with Dr. Beecher, Plaintiff was continued on his medications and physical therapy. T. 89.

Dr. Beecher examined Plaintiff on November 18, 2011 for worsening left hip and groin pain. T. 82. Sizer reported that water therapy and other physical therapy sessions were not helpful and wanted stronger pain relief. T. 82. Dr. Beecher noted that Plaintiff walked with a limp and obvious discomfort. T. 82. Dr. Beecher continued Vicodin, Ibuprofen and Amitriptyline for pain and recommended seeing an orthopedist for surgery consideration. T. 82. Images taken on December 8, 2011 indicate that Plaintiff had marked osteoarthritis in the left hip. T. 81.

Plaintiff received physical therapy from January, 2012 through July, 2012. T. 14. In a form completed for therapy, Sizer indicated that he was having moderate difficult doing his usual work or house work, lifting objects, performing light activities around the house and rolling over in bed. T. 20. He self reported that he had "quite a bit of difficulty" getting into or out of bed, putting on shoes, squatting, walking two blocks, going up or down ten stairs, or hopping. T. 20. Finally, he reported "extreme difficulty or unable to perform" usual recreational or sporting hobbies, heavy activities around the house, walking 2 blocks, walking a mile, standing or sitting for one hour, and running. T. 20.

Plaintiff was referred to Dr. Christopher Drinkwater, an Orthopaedist, for left hip resurfacing. T. 47. The images show that

Sizer had "advanced arthritic change" in the left hip and "moderate-advanced arthritic change" in the right hip and he reported extreme pain in his left hip, groin area with walking and activities of daily living. T. 38, 47. Plaintiff had active left hip flexion to 60 degrees with pain. He also had pain with log roll maneuvers, external rotation, and internal rotation to 10 degrees before experiencing pain in the groin. T. 47. Dr. Drinkwater performed left hip resurfacing on April 11, 2012. T. 33. Severe degenerative changes were noted during the procedure. T. 33.

On May 7, 2012, Plaintiff had images taken of the deep venous system of the left lower extremity at high resolution. T. 27. These images showed no evidence of deep venous thrombosis. T. 27.

Plaintiff was treated on May 3, 2012 by Dr. Beecher for a follow up on the left hip. T. 66. Dr. Beecher noted that the resurfacing surgery went well but Plaintiff was still in pain, using Motrin and Vicodin as needed for the pain. T. 66. Plaintiff was in "no acute distress sitting" but "rises with mild distress" and walks with a cane. T. 66.

Dr. Beecher completed a Physical Residual Functional Capacity Questionaire for Sizer on June 20, 2012. In this form, Dr. Beecher noted that he had been Plaintiff's primary care physician since 2010. T. 7. He considered Sizer to have a "fair" prognosis for his condition of osteoarthritis of the left hip. T. 7. He noted that Sizer had persistent pain in the left hip and back as well as in the

groin and radicular pain in the left leg. T. 7. Plaintiff was unable to squat with the left hip and had a mild antalgic gait. T. 7. Plaintiff was taking Motrin and Vicodin for the pain. He had completed physical therapy and was scheduled for water therapy. His condition is "likely permanent." T. 7.  Dr. Beecher opined that Plaintiff experienced pain frequently and based on Plaintiff's "declaration of ongoing pain," Sizer was incapable of even low stress jobs. T. 8.  In an 8 hour working day, Dr. Beecher thought Plaintiff could stand or walk less than 2 hours and sit at least 6 hours. T. 9. He further noted that Plaintiff would need periods of walking around during an 8 hour day every 15 minutes and walk 2 to 3 minutes at a time. T. 9. Sizer would need a job that permits shifting positions at will from sitting to standing or walking and need unscheduled breaks. T. 9. Sizer did not need any assistive device to walk and did not need his legs elevated. T. 9. He could only rarely lift less than 10 pounds. T. 9.  Sizer could frequently look up or down, turn his head, and hold his head still. T. 10.  Dr. Beecher noted that Plaintiff should never stoop, crouch, squat or climb ladders and rarely twist and climb stairs. T. 10.

B. Plaintiff's Hearing Testimony

Plaintiff testified that he last worked doing assembly, maintenance and janitorial work in temporary assignments. T. 103.

On a typical day, Plaintiff might go to physical therapy which he does twice a week. T. 103. He does his own grocery shopping,

cleaning his room and taking care of personal care. T. 104. Sizer goes shopping with someone to help with transportation and lifting anything more than 10 pounds. T. 105.

Plaintiff testified that he can't work because of his left hip, groin and leg pain. T. 107. Plaintiff testified that he was injured while working for Rochester Aluminum and Bronze when a machine backfired. Sizer had his back to the machine, was startled, jumped in the air and came down in a split. T. 107. His left hip hurt him ever since. T. 107. He was taking motrin, Ibuprofen, Vicodin and sometimes Flexeril at the time of the hearing. T. 106. He took Vicodin to help him sleep and after therapy. T. 106.

Sizer testified that he has had difficulty going up or down stairs for the four years up to and including the time of the hearing. T. 102. He lived in a one story house with a friend and relies on family members to drive him when he needs to go somewhere. T. 102. He testified that he was not able to drive a car because his leg could not sit in the required position. T. 108. Plaintiff testified that he is not able to sit or stand for more than 15 to 20 minutes at a time before he needs to move around. T. 105.

C. Vocational Expert Testimony

A vocational expert testified at the hearing. He noted that Plaintiff's past jobs required medium strength but unskilled work. T. 111. The ALJ posed a hypothetical in which an individual was

limited to light work with the following additional limitations: requires a sit/stand option to alternate between sitting and standing positions at least every 30 minutes; occasionally use ramps and climbing stairs but never climbing ladders, ropes or scaffolds; only occasional balancing, stooping, kneeling, crouching and crawling; should avoid concentrated exposure to extreme cold, heat, wetness and humidity; avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation; and avoid hazards including moving machinery and unprotected heights. T. 111-112. The Vocational Expert opined that given the same education and background as Plaintiff, this individual could not do Plaintiff's past work. T. 112. However, the Vocational Expert did note other light skilled jobs that this individual could do such as a mail clerk, stock checker apparel, and ticket seller. T. 112.

When the ALJ reduced the hypothetical to sedentary work with the same additional limitations, the Vocational Expert concluded that such an individual could perform the jobs of ticket taker or checker, surveillance-system monitor, and call-out operator. T. 113.

When the ALJ added any one of the additional limitations of limited to sitting for two hours and standing and walking for two hours in an eight hour day, or would be off task more than 20 percent of the day due to concentration issues, or would require unscheduled breaks, or would be absent more than three times a month, the

Vocational Expert testified that none of the jobs would be available to such an individual. T. 114.

## DISCUSSION

I. Scope of Review

Title 42 U.S.C. §405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that the plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. see generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

15

II. <u>The Commissioner's Determination of Plaintiff's Residual</u>
<u>Functional Capacity is Supported by Substantial Evidence</u>

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. In doing so, the ALJ adhered to the Social Security Administration's five step sequential analysis evaluating disability benefits. (Tr. 12-18) The five step analysis requires the ALJ to consider the following: 1) whether the claimant is performing substantial gainful activity; 2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; 3) whether the claimant suffers a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled; 4) if not, the ALJ next considers whether the impairment prevents the claimant from doing past relevant work given his or her residual functional capacity; 5) if the claimant's impairments prevent his or her from doing past relevant work, whether other work exists in significant numbers in the national economy that accommodates the claimants residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

Under step one of the process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity at any time during the period from his alleged onset date of November 23, 2009. T. 122. The ALJ next found that the Plaintiff suffered from the following severe impairments: degenerative joint disease of the left hip and asthma. T. 122.  At step 3, The ALJ found that Plaintiff's impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P. T. 18.  Further, the ALJ found that Plaintiff had the residual functional capacity to perform the sedentary work as defined in 20 C.F.R. § 416.967(a) except that he required a sit/stand option, allowing Plaintiff to alternate between a sitting and standing position every 30 minutes; occasional use of ramps and climbing stairs, but never climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling; avoiding concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; and should avoid hazards including moving machinery and unprotected heights. T. 122.  The ALJ next determined that Plaintiff was not able to perform his past relevant work. T. 125. Finally, the ALJ determined that considering Plaintiff's age, education, past relevant work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform. T. 125.

Plaintiff argues that the ALJ erred by: 1) failing to properly establish the Plaintiff's residual functional capacity; 2) failing to apply the relevant legal standards in evaluating Plaintiff's credibility; and 3) failing to establish that there are jobs in the economy that Plaintiff could perform. I find that there is substantial evidence in the record to support the ALJ conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act.

## A. There is Substantial Evidence in the Record to Support the ALJ's Determination of Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erred in his determination of Plaintiff's residual functional capacity ("RFC") by improperly evaluating the medical evidence. Specifically, he points out that the ALJ improperly gave Dr. Beecher's opinion "little weight" and substituted his own judgment for that of the treating physician and consultative examiner.

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 404.1545(a)(3)-(4). It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole. See, e.g., Veno v Barnhart, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citing Richardson v. Perales, 402

U.S. 389, 399 (1971)); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.")

Here, the ALJ concluded that although Plaintiff had some limitations, the evidence did not support the presence of limitations that would preclude Plaintiff from performing a range of sedentary work with some additional limitations. (Tr. 122)  Sedentary work involves lifting no more than ten pounds and involves limited walking or standing. 20 C.F.R. § 404.1567(a).  The ALJ added the additional limitations that Plaintiff required a sit/stand option allowing him to alternate between sitting and standing position every 30 minutes, occasional use of ramps and climbing stairs but never climbing ladders, ropes or scaffolds, occasional balancing, stooping, kneeling, crouching, crawling and should avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases and poor ventilation as well as hazards such as moving machinery and unprotected heights. T. 122. The ALJ reached this conclusion from a review of all of the relevant medical evidence as well as evaluating Plaintiff's subjective complaints.

Here, the ALJ properly considered the weight to be given the medical opinions of Dr. Beecher and Dr. Boehlert and articulated good reasons for not giving Dr. Beecher's opinion controlling weight.  The ALJ gave Dr. Boehlert's opinion great weight as it was consistent with the medical record and Plaintiff's activities of daily living.

Dr. Boehlert diagnosed Plaintiff with severe hip pain, chronic musculoskeletal disease and asthma with limitations to heavy exertion in a standing position. T. 243-44.

Plaintiff's treatment for osteoarthritis of the left hip had been conservative. Plaintiff was treated with physical therapy and pain medications as needed. Moreover, Plaintiff's activities of daily living support the RFC. Plaintiff testified that he could lift a gallon of milk, cook, clean, do laundry, shop, socialize with friends and go to physical therapy twice a week. T. 104-105, 241-42.

Conversely, the ALJ gave little weight to the two RFC forms completed by Dr. Beecher. The two opinions, although prepared only two months apart, were inconsistent with each other with regard to Plaintiff's ability to walk, stand, sit, lift and carry. In the February 22, 2011 opinion, Dr. Beecher found that Plaintiff could only walk, sit, stand, lift and carry for one to two hours per day. T. 286. Yet, in the opinion dated April 26, 2011, Dr. Beecher concluded that Plaintiff could sit for at least six hours in an 8-hour workday. T. 290. Even with the attorney letter attempting to reconcile these two opinions, the ALJ properly concluded that the opinions remained inconsistent with each other and with the medical evidence in the record. T. 124. In a third RFC assessment by Dr. Beecher dated June 20, 2012 which was submitted to the Appeals Council with the request for review of the ALJ decision, Dr. Beecher again opined that Plaintiff could sit for 6 hours in an 8-hour

workday, consistent with his April, 2011 opinion. T. 9. Finally, the ALJ points out that Dr. Beecher is a family practitioner and not an orthopedic specialist. T. 124.

Given the inconsistencies of Dr. Beecher's opinions as well as the consistency of Dr. Boehlert's opinion with the objective medical evidence and activities of daily living, I find substantial evidence in the record to support the ALJ finding of Plaintiff's residual functional capacity.

B. <u>The ALJ's Credibility Assessment is Supported by Substantial Evidence</u>

In determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's statements about his subjective complaints of pain and functional limitations and found that they were not entirely credible. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, but that Plaintiff's statements regarding the "intensity, persistence and limiting effects of those symptoms are not credible to the extent that they were inconsistent with the RFC. T. 124. Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence.

"The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms." <u>Otero v. Colvin</u>, 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013). Thus, it

is not logical to decide a claimant's RFC prior to assessing her credibility. Id. This Court, as well as others in this Circuit, have found it improper for an ALJ to find a Plaintiff's statements not fully credible simply "because those statements are inconsistent with the ALJ's own RFC finding." Ubiles v. Astrue, No. 11-CV-6340T (MAT), 2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012) (citing Nelson v. Astrue, No. 5:09-CV-00909, 2012 WL 2010 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), report and recommendation adopted, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); other citations omitted)). Instead, SSR 96-7p requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1529, 416.929.

However here, the ALJ measured Plaintiff's credibility by evaluating all of the required factors bearing on Plaintiff's credibility prior to deciding Plaintiff's RFC.  She discussed Plaintiff's daily activities, frequency and intensity of Plaintiff's symptoms, the effectiveness of medication and the treatment of Plaintiff's symptoms. The ALJ determines issues of credibility and great deference is given her judgment. Gernavage v. Shalala, 882 F.Supp. 1413, 1419, n.6 (S.D.N.Y. 1995).

The ALJ noted that although Plaintiff complained of pain affecting his left hip and groin, his treatment was conservative with medication and physical therapy exercise. T. 123. Plaintiff remains

active and is able to perform various activities without significant limitations.

The ALJ did not discount Plaintiff's complaints entirely. Rather, in assessing Plaintiff's residual functional capacity, the ALJ determined that Plaintiff was unable to perform more than sedentary work and indeed imposed a more restrictive RFC than that suggested by Dr. Boehlert. For example, the ALJ found that Plaintiff required a sit/stand option based on his testimony and Dr. Beecher's opinion. Accordingly, Plaintiff's argument that the ALJ failed to properly assess his subjective complaints is rejected.

C. <u>There is Substantial Evidence in the Record to Support the Finding that there are Jobs in Significant Numbers in the Economy that Plaintiff Can Perform</u>

Lastly, Plaintiff argues that the ALJ erred when she relied on the Vocational Expert in determining that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. T. 125-126.

At step five, the burden is on the Commissioner to prove that "there is other gainful work in the national economy which the claimant could perform." <u>Balsamo v. Chater</u>, 142 F.3d 75 (2d Cir. 1998). The ALJ properly may rely on an outside expert, but there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1554 (2d Cir. 1983).

Plaintiff objects that the hypothetical posed to the Vocational Expert was based on an erroneous RFC due to the ALJ's errors with regard to assessing Plaintiff's credibility and the proper weighing of medical evidence. A Vocational Expert's opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability. See DeLeon v. Secretary of Health and Human Servs., 734 F.2d. 930, 936 (2d Cir. 1984).

The vocational expert testified at Plaintiff's hearing that a hypothetical individual with limitations that corresponded to the ALJ's RFC assessment could perform the jobs of ticket taker/checker, surveillance system monitor and call-out operator. T. 113. The vocational expert considered an individual of Plaintiff's age and education who could perform sedentary work but that also needed to sit/stand alternatively throughout the day at least every 30 minutes; only occasionally use ramps and climb stairs and never climb ladders ropes or scaffolds; only occasionally balance, stoop, kneel, crouch and crawl and avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dust, gases and poor ventilation, concluded that he could perform Plaintiff's past relevant work. Because there is substantial evidence in the record to support the RFC assessment of the ALJ, the ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §404.1560(b)(2).

**CONCLUSION**

After careful review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of DIB and SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 7). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 9), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

<u>S/Michael A. Telesca</u>

Honorable Michael A. Telesca

United States District Judge

DATED: Rochester, New York

December 3, 2013